IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **JONATHAN DAVID MANSON,** | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 1:20-CV-03345-SAG |
| **MARYLAND STATE BOARD OF PHYSICIANS,** | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

Jonathan David Manson ("Plaintiff"), who is self-represented, filed a Complaint on November 7, 2020, against the Maryland State Board of Physicians ("Defendant"). ECF 1. Plaintiff alleges the following: violations of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 (Count I); violations of the Rehabilitation Act, 29 U.S.C. § 794 (Count II); and Third-Party ADA Interference under 42 U.S.C. § 12203(b) (Count III). Mr. Manson seeks declaratory relief and injunctive relief, as well as monetary damages, costs, and fees. Defendant has filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. ECF 20. Plaintiff filed a response, ECF 23, to which Defendant did not reply. I have carefully reviewed the filings in this case, and no hearing is necessary to resolve the pending motion. *See* Local Rule 105.6 (2018). For the reasons that follow, Defendant's motion to dismiss will be granted.

### I.   Factual and Procedural Background

The following facts are taken from Plaintiff's Complaint and are assumed as true for the purposes of this Motion. Plaintiff is a 62-year old individual diagnosed with Autism Spectrum Disorder, which he asserts is a disability under the ADA and the Rehabilitation Act. ECF 1 ¶ 1.

In 1997, Plaintiff applied for a medical license from Defendant. *Id.* ¶ 7. In 1998, Defendant denied Plaintiff's application based primarily on what it deemed to be intentional omissions on the licensing application. *Id.* at ¶ 3. Plaintiff's disability was not in the record and was therefore not considered by Defendant in its decision, though Plaintiff claims that this is because Defendant would not allow him to raise this argument at several junctures during the process. *Id.* ¶ 7; *see also* ECF 20-3. Regardless, the licensing denial was ultimately reported to a number of national databases, such as Verisys and the National Practitioner Data Bank ("NPDB"). ECF 1 ¶ 3.

Since Plaintiff's licensure denial over 20 years ago, he has attempted to seek employment in other industries, such as law and teaching, but has had trouble attaining such positions despite the requisite training because of the licensure denial report, which appears whenever a prospective employer runs a background check. *Id.* ¶ 13-14. As a result, in February 2020, he sent a letter entitled "Request for a Reasonable Accommodation under ADA Title II" to Defendant, explaining his autism diagnosis and asking that Defendant void his NPDB and Verisys licensure denial reports "to allow [him] to be employed in teaching or law. . . ." ECF 1-9. Though a member of Defendant's customer service division initially responded to Plaintiff stating that she had forwarded his request to appropriate staff for follow-up, Defendant never formally responded to the request. ECF 1-10.

## II.    Legal Standards

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to test the legal sufficiency of a complaint by way of a motion to dismiss. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221, 133 S. Ct. 1709, 185 L.Ed.2d 758 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts

alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." *See In re Birmingham*, 846 F.3d at 92.

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007).

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' ....") (citation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11, 135 S. Ct. 346, 346, 190 L.Ed.2d 309 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ...

[the] actual proof of those facts is improbable and ... recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943, 132 S. Ct. 402, 181 L.Ed.2d 257 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937, 132 S. Ct. 1960, 182 L.Ed.2d 772 (2012).

Because Plaintiff is self-represented, his pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, Civil Action No. DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."); *aff'd* 526 F. App'x 255 (4th Cir. 2013).

Moreover, a federal court may not act as an advocate for a self-represented litigant. *See Brock v. Carroll*, 107 F.3d 241, 242-43 (4th Cir. 1996); *Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Therefore, the court cannot "conjure up questions never squarely presented," or fashion claims for a plaintiff because he is self-represented. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986); *see also MD v. Sch. Bd. of City of Richmond*, 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (unpublished) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint).

As a final matter, Defendant seeks as an alternative to treat the Motion as one for summary judgment, ECF 20, to which Plaintiff strenuously objects, ECF 23 at 5-6. Since discovery has not yet occurred, the Court sees little grounds for such a conversion. That said, both parties attach significant documentation to their filings. When a party files documents external to the complaint with a motion to dismiss, the Court may (a) consider those documents if they are integral to the complaint, explicitly relied on in the complaint, and their authenticity has not been challenged; (b) decline to consider the documents; or (c) convert the motion to a motion for summary judgment and permit reasonable discovery. *See, e.g.*, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011); *Sager v. Hous. Comm'n of Anne Arundel Cnty.*, 855 F. Supp. 2d 524, 542 (D. Md. 2012). Here, the Court will consider two documents attached by Defendant: the original licensure denial decision, ECF 20-3, and the recent dismissal of Plaintiff's Maryland state court action, ECF 20-4, because they are integral to the Complaint and to the initial question of its timeliness. The dismissal also constitutes a matter of public record. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). This Court will decline to consider the remainder of the documents attached to the Motion and Response at this stage of the litigation.

**III.    Analysis**

    **A. Counts I & II: Failure to Make Reasonable Accommodations and Failure to Respond to a Reasonable Accommodation Request**

The crux of Plaintiff's first two claims is that Defendant acted in violation of federal law when it failed to respond to Plaintiff's accommodation request seeking to remove the report of his licensing denial from various databases. *See* ECF 1 at 20-28. "The ADA and Rehabilitation Act generally are construed to impose the same requirements due to the similarity of the language of the two acts." *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468 (4th Cir. 1999). To prevail under an ADA Title II or Rehabilitation Act § 504 claim, "a plaintiff must show that she was excluded from participation in, or denied the benefits of, a program or service offered by a public entity, or subjected to discrimination by that entity." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (emphasis omitted). To that end, the Fourth Circuit has recognized "three distinct grounds for relief: (1) intentional discrimination or disparate treatment; (2) disparate impact; and (3) failure to make reasonable accommodations." *A Helping Hand, LLC v. Baltimore Cty., MD*, 515 F.3d 356, 362 (4th Cir. 2008). Count I and Count II center on this third category.

There appears no dispute that Defendant did not respond to Plaintiff's request on February 24, 2020, asking Defendant to void the licensure denial reports published in databases like NPDB and Verisys (FACIS III). ECF 1-9 at 2. Once a request for accommodation is submitted, the entity must engage in an "interactive process" to identify a reasonable accommodation, such that "fail[ing] to communicate[] is not acting in good faith to find a solution" and may be a violation of the law. *Fleetwood v. Harford Sys. Inc.*, 380 F. Supp. 2d 688, 701 (D. Md. 2005); *see also Windham v. Harris Cty., Texas*, 875 F.3d 229, 237 (5th Cir. 2017); *Pierce v. D.C.*, 128 F. Supp. 3d 250, 271 (D.D.C. 2015). The question of whether an accommodation request is reasonable is

generally a question of fact that the Fourth Circuit has determined is ill-suited for disposition at summary judgment, let alone the motion to dismiss stage. *Seremeth v. Bd. of Cnty. Com'rs Frederick Cnty.*, 673 F.3d 333, 340 (4th Cir. 2012). However, this case as presently pled presents a rather unusual set of circumstances. While Plaintiff certainly framed his claims, as well as his underlying communications with Defendant, in the language of reasonable accommodation, there appears little in his allegations actually linking his sought-after relief with his disability. As such, the inquiry does not simply end with the fact that Defendant failed to respond to Plaintiff's request—instead, closer scrutiny is warranted as to whether Plaintiff's request, based on the factual allegations presently pled, was one for accommodation at all in light of the ADA's statutory language and the purpose of such accommodations in the first place.

Put in the simplest terms, the purpose of a reasonable accommodation under the ADA and Rehabilitation Act is to accommodate the seeker's disability and allow him to equal access an institution's services, programs, or benefits that he might otherwise have difficulty accessing due to his disability. *See, e.g.*, *Brown v. Dep't of Pub. Safety & Corr. Servs.*, 383 F. Supp. 3d 519, 556 (D. Md. 2019) (stating that accommodations under ADA Title II are provided to ensure disabled individuals equal access to various facets of prison life); *Constantine*, 411 F.3d at 488 ("In the context of public higher education, Title II requires state colleges and universities to make reasonable accommodations for disabled students to ensure that they are able to participate in the educational program."). There must, then, be some alleged link between the accommodation requested and the disability claimed, since the accommodation is meant to enable the disabled individual to overcome that disability to achieve equal access in some way. The plain language of

the statute confirms that the accommodation (or modification[1]) sought must be related to the disability in question. For example, ADA Title II refers to "reasonable modifications to rules, policies, or practices" alongside actions like "the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services," all of which are referenced in the context of assisting a disabled individual to access a public entity's programs or activities. 42 U.S.C. § 12132. This interpretation, requiring a link between the disability and the accommodation requested, is further supported by simple common sense—reasonable accommodation, in a statutory scheme designed "to promote equal access and participation in government services," *Seremeth*, 673 F.3d at 340, surely must be an accommodation of the disability in question thus advancing *equal* access, rather than simply an accommodation in the abstract that improves the requester's life without any connection to the disability (thus not making access any more equal at all).

The above proposition, requiring a link between the accommodation requested and the claimed disability, is so fundamental as to border on tautological. Yet, crucially, such a link is lacking here. Plaintiff's only proffered justification for the accommodation in his initial request to Defendant was to "allow [him] to be employed in teaching or law. . . ."[2] ECF 1-9 at 5. His

---

[1] Reasonable modifications and accommodations mean the same thing for the purposes of ADA Title II and the Rehabilitation Act. *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 371 (D. Md. 2011).

[2] To the extent Plaintiff suggests that the link between the requested removal of the reports and his autism is the fact that Defendant failed to consider his autism in its 1998 decision to deny him licensure—such as his assertion that Defendant would have decided differently regarding his licensing application had it considered his autism, ECF 23 at 10, or his argument that he did not intentionally omit anything from his application because people with autism generally are not deceptive, *id.* at 12-13—these arguments inappropriately go to the merits of the underlying denial, the re-litigation of which is foreclosed on timeliness grounds. The licensing decision was made more than twenty years ago, well outside the three-year statute of limitations period traditionally applied to the ADA and Rehabilitation Act. *See Edwards v. Montgomery Coll.*, No. CV TDC-17-

Complaint, meanwhile, repeatedly emphasizes this desire "to be gainfully employed" and conclusorily states, only once and without elaboration, that gainful employment would help him manage his autism. ECF 1 at 6. While there can be no doubt that the removal of the licensure denial reports would be broadly helpful to him as he seeks employment and attempts to obtain licensing in other professions, the same would be true for any person with a history of licensing denial, whether that person has a disabling medical condition or not. There are no allegations supporting the conclusion that removal of the reports from public databases would accommodate Plaintiff's autism in any way, let alone a way that would facilitate his equal access to Defendant's programs, services, or benefits.[3] This shortcoming is highlighted when the accommodation request here is contrasted with those in other cases where the link between the request and the disability is unmistakable, such a request for additional exam time to allow for a law student's severe migraines, *Constantine*, 411 F.3d at 499, or a request for implementation of an online tool

---

3802, 2018 WL 4899311, at *5 (D. Md. Oct. 9, 2018) (noting that, historically, judges in this District have applied Maryland's general three-year statute of limitations, but considering whether the two-year limitations period created by new amendments to Maryland's Anti-Discrimination Law should apply instead). Additionally, Plaintiff had the right to appeal Defendant's licensure decision in Maryland state court within 30 days in 1998, ECF 20-3 at 7, but failed to do so. His recent attempt to obtain belated judicial review of that decision in September 2019 was dismissed with prejudice for that very lack of timeliness, among other reasons, and has not been appealed. ECF 20-4.

[3] In his Response, Plaintiff repeatedly references "information privacy benefits," apparently suggesting that by failing to remove the licensure denial reports from the various databases, Defendant was depriving him of such privacy. However, Plaintiff provides no support for the proposition that "information privacy" is a benefit that Defendant confers upon candidates seeking licensure. While privacy is a fundamental right protected by the Fourteenth Amendment in certain contexts, the ADA and Rehabilitation Act require Plaintiff to have been deprived of the benefit of "the services, programs, or activities *of a public entity*" specifically, not merely a benefit in the abstract. Plaintiff has cited, and the Court has found, no case law suggesting that an entity such as Defendant individually confers the benefit of information privacy in the sense covered by the relevant statutes here. In fact, Defendant is statutorily required to make licensing denial information public in specified ways pursuant to Md. Code Ann., Health Occ. § 14-411.

allowing blind and other disabled voters to mark their absentee ballots electronically, *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 508 (4th Cir. 2016). Thus, Plaintiff's request was not actually one for accommodation under the ADA or the Rehabilitation Act because there are no allegations tying his request to his stated disability. Defendant's failure to respond to the request, therefore, was not a violation of those statutes as the case is presently pled.

Setting aside the fact that Plaintiff has made no allegations specifying how removing the licensure denial report from the various databases would accommodate his autism, he similarly fails to provide specific factual allegations creating the necessary nexus between the modification he requested and how it would avoid autism-based discrimination. He repeatedly cites Defendant's obligation to make reasonable modifications of its policies, practices, or procedures to avoid discrimination on the basis of an individual's disability, 28 C.F.R § 35.130(b)(7), but fails to allege any facts that could plausibly support a finding of discrimination. While he repeatedly asserts that Defendant failed to respond to his accommodation request only because of his autism, *see, e.g.*, ECF 23 at 9, he provides no factual support for this contention. His brief's citation to Defendant's 2021 Terminated Sanctions decisions and the fact that no individual with autism has had their sanctions terminated, *id.*, is of little support to his argument since the "terminations" listed all pertain to sanctions Defendant has levied on licensed individuals, as opposed to anything related to denials of licensure. The Court was unable to locate in that list a single instance of *anyone*, disabled or otherwise, having their licensure reports voided and removed from various databases. In fact, by his own admission, Plaintiff does not know if people diagnosed with autism are treated any differently by Defendant when it comes to voiding or otherwise removing licensure

denial reports from various online databases.[4] *See id.* at 9 (stating that in discovery he would seek information regarding whether "all autistics [are] refused requests or responses, whereas those that are not disabled . . . have requests granted"). Thus, his unsupported assertions of discrimination, the conclusory nature of which he confirms via his description of the information he hopes to uncover in discovery, are insufficient to state a claim upon which relief can be granted.

Because the ADA and Rehabilitation Acts require a connection between the accommodation or modification requested and the claimed disability, and because that connection is missing from Plaintiff's pleadings, Count I and II of the Complaint will be dismissed without prejudice.

### B.  Count III – Third Party Interference in Violation of 42 U.S.C. § 12203(b)

Plaintiff's third and final claim centers on an issue separate from the reasonable accommodation rationale outline above, but nonetheless finds itself on no surer legal footing. Specifically, he alleges that Defendant violated the law by interfering with his "right to have a livelihood and self-sufficiency through employment" under the ADA by "preventing [him] from

---

[4] Plaintiff also alleges few facts supporting his conclusory assertion that Defendant can control what databases like NPDB and Verisys display in the first place. The fact that Defendant may be able to ask these separate companies to take down their respective versions of the report is a far cry from plausibly alleging that Defendant can control the content of those databases. While it need not reach the issue here, Plaintiff may not have sufficiently pled facts showing that taking down the reports can be deemed a service, program, or benefit Defendant provides in the first place, since the publication of the reports on those seemingly independent websites may be out of its control. This concern is particularly acute because Plaintiff's requested remedy here is not to actually overturn or change the underlying licensure decision, but rather simply to limit its spread. *See* ECF 23 at 10 (characterizing his claim as "not about removing the licensure denial, or changing, or amending the Final order in any way"). Given that the underlying fact of his licensure denial remains accurate and unchanged, there appears little reason for these databases to acquiesce to such a request. In fact, using the NPDB "void report" function that Plaintiff cites in his brief as an example, ECF 23 at 32, reports are only voided in that database if the report was submitted in error, did not meet NPDB reporting requirements, or was overturned on appeal. Even if Plaintiff succeeded in this suit, none of those circumstances are at play here, such that there appears little grounds for concluding that Defendant could actually get the report removed even if it tried.

working in teaching or law nationally due to the [licensure denial reports]." ECF 1 at 23. The relevant ADA provision in question provides that:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203(b). While the Court is aware of no Fourth Circuit case law interpreting this provision, the Seventh Circuit has held that a plaintiff alleging ADA interference must show: "(1) [ ]he engaged in an activity that is statutorily protected by the ADA; (2) [ ]he was engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; (3) the defendants coerced, threatened, intimidated, or interfered on account of [his] protected activity; and (4) the defendants were motivated by an intent to discriminate." *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550-51 (7th Cir. 2017).

Count III falls short for several reasons. First, Plaintiff provides no support for his assertion that the statutorily protected activity he was engaged in was his "right to have a livelihood and self-sufficiency through employment." ECF 1 at 23. While there can be no doubt that the ADA protects against discrimination in a disabled individual's job hunt, the Court is aware of no provision enshrining an underlying right to employment in the first place. Second, even if such a right existed, he has not plausibly alleged that Defendant intentionally interfered with it "on account of [his] protected activity," or that it did so motivated by discriminatory intent. The licensure denial report—the instrument actually causing the alleged interference—was issued more than 20 years ago, and was a decision made without any evidence in the record regarding Plaintiff's autism. The report has, apparently, been in the public sphere ever since, because Defendant was required by law to "disclose [it] to the public." Md. Code Ann., Health Occ. § 14-411. Nothing, then, in the decision-making process or the initial publication of that decision can

be plausibly alleged to have been driven by a discriminatory motive, since Defendant was not aware of Plaintiff's autism at that time. Now, over two decades later, Plaintiff has requested to have that report removed from certain databases and Defendant has not responded to that request. But, as explained in Section III(A), Plaintiff has failed to provide any factual allegations that would suggest that Defendant has treated his request differently due to his autism or has taken any other adverse action in response to the protected activity. Instead, Defendant's inaction simply allowed this report, which has been circulating for two decades, to remain in the public sphere, which cannot be plausibly construed as an action designed to interfere with an exercise of ADA rights. As such, Plaintiff has failed to state a claim upon which relief may be granted as to Count III.

## IV.   Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss, ECF 20, will be GRANTED. Plaintiff's claims will be dismissed without prejudice. A separate Order follows.


Dated:  June 9, 2021                              /s/
                                         Stephanie A. Gallagher
                                         United States District Judge